IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY JEROME GRADY, # 143344, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11cv430-WKW |
| | ) | (WO) |
| KENNETH JONES, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Larry Jerome Grady ("Grady"), an Alabama inmate proceeding *pro se*, is before this court on his federal habeas corpus petition under 28 U.S.C. § 2254.

## I.  BACKGROUND

On October 26, 2005, a Lee County jury found Grady guilty of murder in violation of § 13A-6-2, Ala. Code 1975.  On December 14, 2005, the trial court sentenced Grady as a habitual offender to life in prison.

Grady appealed.  His appellate counsel filed a "no merit" *Anders* brief[1] stating that he had thoroughly reviewed the record and could find no arguably meritorious issues supporting an appeal.  Doc. No. 54, Resp'ts' Ex. B at 16-22.[2]  Grady was allowed to submit *pro se* issues, and did so in a brief asserting the following claims:

1.  Trial counsel rendered ineffective assistance by–

---

[1] *See Anders v. California*, 386 U.S. 738 (1967).

[2] References to document numbers are to those assigned by the Clerk of Court in the instant action.  Page references are to those assigned by CM/ECF.

(a)     failing to conduct adequate pretrial investigation and preparation;

(b)     failing to argue to the jury that Grady was justified in shooting the victim to prevent him from stealing his car;

(c)     failing to present the victim's criminal history to the jury;

(d)     not allowing Grady to testify on his own behalf;

(e)     not requesting a jury instruction on a lesser included offense; and

(f)     allowing an old photograph of the victim to be shown to the jury.

2.     The trial court erred by–

(a)     denying defense counsel's challenge for cause as to a juror;

(b)     denying the defense's motion in limine and ruling that Grady's prior convictions were admissible for impeachment purposes; and

(c)     giving a jury instruction on flight.

3.     There was a fatal variance between the charge in the indictment and the evidence presented at trial, because the State did not prove his intent to kill the victim.

4.     The prosecutor engaged in misconduct during closing argument by expressing his opinion as to Grady's guilt and "withholding" certain evidence.

5.     The State withheld evidence of Grady's motive for shooting the victim.

2

6.    Appellate counsel rendered ineffective assistance by–

(a)    filing an *Anders* brief that failed to argue that trial counsel was ineffective;

(b)    failing to argue that the trial court erred by giving a jury instruction on flight; and

(c)    failing to argue that the trial court erred in denying the defense's motion in limine and ruling that Grady's prior convictions were admissible for impeachment purposes.

Doc. No. 54, Resp'ts' Ex. C at 1-10.[3]

On August 11, 2006, the Alabama Court of Criminal Appeals affirmed Grady's conviction in an unpublished memorandum opinion, stating that "[t]his court has examined the record, appellate counsel's brief, and the appellant's pro se brief, and is in agreement with appellate counsel that there are no issues contained therein which could be deemed meritorious on appeal."  Doc. No. 8, Resp'ts' Ex. A at 2.  Grady did not take any further action on direct appeal, and the Alabama Court of Criminal Appeals issued a certificate of judgment on August 30, 2006.  Doc. No. 8, Resp'ts' Ex. B.

On September 11, 2006, Grady filed a *pro se* Rule 32 petition[4] in the trial court asserting the same claims he presented in his *pro se* brief on direct appeal as well as

_____

[3] The *Anders* brief filed by Grady's appellate counsel addressed each of Grady's *pro se* claims and found each lacking in merit.  *See* Doc. No. 54, Resp'ts' Ex. B.

[4] *See* Ala. R. Crim. P. 32.

3

additional claims that his appellate counsel was ineffective for failing to pursue *Batson*[5] issues on appeal and for failing to challenge the trial court's denial of his motion for a judgment of acquittal. *See* Doc. No. 54, Resp'ts' Ex. C at 15-49.

On November 2, 2006, the trial court entered an order denying Grady relief on all claims in his Rule 32 petition except for his allegations against his appellate counsel, which the court set for further consideration at either an evidentiary hearing or based on the parties' evidentiary submissions, including affidavits. Doc. No. 54, Resp'ts' Ex. D at 58-59. On March 19, 2007, after receiving an affidavit from Grady's appellate counsel, the trial court entered a final order denying Grady relief on his claims that his appellate counsel rendered ineffective assistance. *Id*. at 86-89, 94-95.

Grady, still proceeding *pro se*, filed an appeal asserting the same claims he had presented in his Rule 32 petition. *Id*., Resp'ts' Ex. E. On February 15, 2008, by unpublished memorandum, the Alabama Court of Criminal affirmed the trial court's judgment denying Grady's Rule 32 petition. Doc. No. 8, Resp'ts' Ex. C. No application for rehearing was filed, and on March 5, 2008, the Alabama Court of Criminal Appeals issued a certificate of judgment. *Id*., Resp'ts' Ex. D.

On April 14, 2011, Grady filed a *pro se* motion in the Alabama Court of Criminal Appeals styled as a "Motion to Suspend the Rules to Allow for an Out-of-Time Application for Rehearing." Doc. No. 8, Resp'ts' Ex. E. In that motion, Grady argued he was entitled

---

[5] *See Batson v. Kentucky*, 476 U.S. 79 (1986).

to an out-of-time rehearing of the Court of Criminal Appeals' February 15, 2008, decision affirming the denial of his Rule 32 petition.  Specifically, Grady maintained that after he submitted his *pro se* brief to the appellate court on his Rule 32 appeal, he retained the services of an individual named Anthony Alexander, who held himself out as an attorney. *Id*. at 1-2.  Grady, through his wife, had paid Alexander to draft and file an application for rehearing on his behalf in the event of an unfavorable ruling on appeal.  *Id*.  Alexander, however, was not an attorney, and he never filed an application for rehearing for Grady, despite repeatedly assuring Grady and his wife that he was actively pursuing Grady's case. *Id*.  On April 21, 2011, the Alabama Court of Criminal Appeals denied Grady's application for an out-of-time rehearing.  *Id*., Resp'ts' Ex. F.

On June 3, 2011, Grady filed this *pro se* § 2254 petition.  Doc. Nos. 1 and 2.[6]  As grounds for habeas relief, Grady asserts that (a) he was denied due process when, during closing arguments,  the prosecutor "misstated, manipulated, and created evidence that was not presented at trial," and (2) he was denied effective representation by his trial counsel, who did not allow him to testify on his own behalf at trial.  Doc. No. 1 at 5-7; Doc. No. 2 at 10-13.

The respondents argue that Grady's § 2254 petition should be dismissed as being

---

[6] Although the petition was date-stamped as received in this on June 6, 2011, Grady avers that he placed it in the prison mailing system on June 3, 2011.  Under the "mailbox rule," a  *pro se* inmate's petition is deemed filed on the date it is delivered to prison officials for mailing.  *Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999).

untimely under the one-year limitation period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d).[7]  *See* Doc. Nos. 8 and 54.  While acknowledging that his § 2254 petition was untimely, Grady contends that he is entitled to equitable tolling because his late filing was the result of extraordinary circumstances beyond his control.  *See* Doc. Nos. 1, 2, 17, and 60.  The respondents reply that even if Grady is

---

[7] The AEDPA's limitation period for filing a § 2254 petition is codified at 28 U.S.C. § 2244(d) and provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

allowed to benefit from equitable tolling of the limitation period, he is not entitled to habeas relief because his claims are procedurally barred and unexhausted and, in any event, are without merit.  Doc. No. 54.

Following a careful review of Grady's petition and the parties' submissions, the undersigned finds, for the reasons set forth below, that Grady is not entitled to habeas relief on the basis of any of his claims and that his petition should be denied without an evidentiary hearing.  Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.   Federal Limitation Period

As noted above, the Alabama Court of Criminal Appeals affirmed Grady's conviction in an unpublished memorandum opinion issued on August 11, 2006.  Grady did not take any further action on his direct appeal, and the Court of Criminal Appeals therefore issued the certificate of judgment on August 30, 2006.[8]  Because Grady did not file an application for rehearing with the Court of Criminal Appeals, he could not seek certiorari review in the Alabama Supreme Court, and he was therefore not entitled to seek review in the United States Supreme Court.[9]  Accordingly, August 30, 2006, was "the date on which the judgment

---

[8] The certificate of judgment issues 18 days after the appellate court's entry of judgment when an application for rehearing is not filed.  *See* Ala. R. App. P. 41(a).

[9] The filing of an application of rehearing is a prerequisite for certiorari review by the Alabama Supreme Court.  *See* Ala. R. App. P. 40(d)(1) ("In all criminal cases except pretrial appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court.").

became final by the conclusion of direct review or the expiration of the time for seeking such review" and, for purposes of 28 U.S.C. § 2244(d)(1)(A), was the date on which the AEDPA's one-year limitation period began to run.[10]  Grady's filing of his *pro se* Rule 32 petition shortly thereafter, on September 11, 2006, tolled the federal limitation period pursuant to § 2244(d)(2).[11]  The state court proceedings on Grady's Rule 32 petition terminated on March 5, 2008, when the Alabama Court of Criminal Appeals issued a certificate of judgment in Grady's appeal from the denial of his Rule 32 petition.  With the appellate court's issuance of a certificate of judgment, Grady's Rule 32 petition was no longer "pending" in the state courts, *see* § 2244(d)(2), and the federal limitation period began to run again.  The limitation period ran unabated, before expiring on February 23, 2009.[12]  Grady's habeas petition was filed in this court more than two years after expiration of the limitation period.

## B.   Equitable Tolling

Grady argues that this court should apply equitable tolling in his case because Anthony Alexander, whom he had believed to be an attorney and had hired to draft and file an application for rehearing in his Rule 32 appeal, failed to file the application for rehearing

---

[10] *See, e.g.*, *Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236 (11th Cir. 2004).

[11] *See, e.g.*, *Davis v. Giles*, No. 2:06cv640-WKW, 2008 WL 4495698, *3 (M.D. Ala. Oct. 7, 2008).

[12] The limitation period had run for 12 days (from August 30, 2006, to September 11, 2006) before Grady filed the Rule 32 petition that tolled its running.  Thus, 353 days of the period remained when the Alabama Court of Criminal Appeals issued its March 5, 2008, certificate of judgment and the limitation period began to run again.  February 23, 2009, is the first business day after February 21, 2009 (which is 353 days after March 5, 2008).

8

and lied to him about the status of his state case until the limitation period for filing a federal habeas petition had expired. Grady asserts that he was actively misled for almost three years by Alexander, who repeatedly informed Grady and his wife that he had filed the application for rehearing on Grady's behalf and that he was pursuing relief in Grady's state case. *See* Doc. Nos. 1, 2, 17, and 60.

Equitable tolling of the AEDPA's one-year limitation period is warranted only if the federal habeas petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631 (2010) (quotation marks omitted); *see Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004) (explaining that a petitioner must show "both extraordinary circumstances and due diligence"). The diligence required is "reasonable diligence," not "maximum feasible diligence." *Holland*, 130 S. Ct. at 2565. The burden of establishing entitlement to equitable tolling rests with the petitioner. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002).

Materials submitted by Grady reflect that in the latter part of December 2007, while Grady's Rule 32 appeal was still pending (and after Grady had filed a *pro se* appellate brief in the case), Grady and his wife retained Alexander to assist Grady with the appeal process. Part of such assistance was to include Alexander's drafting and filing of an application for rehearing should the Alabama Court of Criminal Appeals render an unfavorable decision on Grady's appeal. *See* Doc. No. 2 at 5; Pet'r's Exs. B and C; Doc. No. 17. Alexander held

himself out as an attorney operating an organization called Review Legal Research ("RLR"). Pet'r's Ex. B at 1-2.  It is undisputed that Grady and his wife believed Alexander was an attorney.  However, Alexander was not an attorney; he was a con man using RLR as a scheme to defraud inmates and their families.  *Id*.

Grady, who was incarcerated at the time, corresponded with Alexander about the status of his case from late December 2007 until mid-February 2008, when Grady received notice from the Alabama Court of Criminal Appeals that the court had affirmed the judgment denying his Rule 32 petition.  Pet'r's Ex. B at 1-2.  Grady mailed a copy of the appellate court's ruling to Alexander, who told him by phone that he would file a notice of appearance with the court and would ask the court for additional time to file an application for rehearing on Grady's behalf.  *Id*. at 2.  Alexander, as it turned out, did neither.

Grady spoke with Alexander by phone several times in the ensuing weeks, with Alexander reassuring him during these conversations that he had filed a notice of appearance and a request for an extension of time.  *See* Doc. No. 2 at 5; Pet'r's Ex. B at 2.  Around March 5, 2008, Grady received the Alabama Court of Criminal Appeals' certificate of judgment, which advised him that the court's judgment affirming the denial of his Rule 32 petition was final.  *Id*.  According to Grady, when he asked Alexander why the certificate of judgment had issued, Alexander told him that the appellate court clerk had made an error and that he would call the clerk to "straighten the matter out."  *Id*.

Grady's contact with Alexander continued by letter and phone through June 2008,

with Alexander reassuring him throughout this time that "the clerk's error" would be rectified and that he was continuing his research on Grady's application for rehearing. *Id*. at 2-3. Sometime in June 2008, Grady, received a letter from an employee at RLR advising him that RLR was not a law firm that acted as legal representation for inmates, but rather was a paralegal research group that drafted motions and briefs for inmates but could not file them on their behalf. *Id*. at 3. When Grady contacted Alexander to ask him about the information in this letter, Alexander assured him that the RLR employee who sent the letter had "overlooked the file notation" showing that Alexander indeed represented Grady as his attorney. *Id*. Grady stayed in touch with Alexander for the next several months, with Alexander continuing to assure him that his application for rehearing would be filed. *Id*.

In October 2008, Grady's wife retained the services of a group called the National Inmate Defense Association ("NIDA") to research claims for a federal habeas petition that Grady anticipated filing. *Id*. Grady corresponded with individuals from NIDA, including attorneys, for the next several months. *Id*. at 3-4. At some point during this period, Grady's wife informed him that Alexander was now working for NIDA. *Id*. at 4. Grady spoke to Alexander, who assured him that he had filed his application for rehearing with the Alabama Court of Criminal Appeals and that it could take months to decide. *Id*. When Grady spoke to or attempted to correspond with Alexander in the months that followed, Alexander seemed annoyed by his questions about the status of his case and did not regularly answer his letters. *Id*. Grady then decided to refrain from regularly contacting Alexander for awhile. *Id*.

11

In November 2009, Grady spoke on the phone with an attorney at NIDA, who informed him that Alexander had been fired from NIDA. *Id*. In the months that followed, Grady's wife had several phone conversations with Alexander in which Alexander continued to assure her that Grady's application for rehearing was pending in the Alabama Court of Criminal Appeals. *Id*. During this period, Grady also wrote to Alexander inquiring about his case; however, Alexander did not respond to his letters. *See* Pet'r's Ex. I. In mid-July 2010, Grady's wife arranged a phone conversation that allowed Grady to talk to Alexander. *See* Pet'r's Ex. H. In that conversation, Alexander again assured Grady that he had "not abandoned him." *Id*.

According to Grady, sometime in December 2010 he overheard a fellow inmate discussing how Alexander had taken the inmate's money after lying to him about filing his case in court. *See* Doc. No. 2 at 5; Pet'r's Ex. B. Recognizing that the same thing had happened to him, Grady wrote to the Alabama Court of Criminal Appeals asking if an application for rehearing had been filed on his behalf. *Id*. The court clerk informed Grady that no application for rehearing had ever been filed. *Id*.

As noted above, on April 14, 2011, Grady filed a *pro se* motion in the Alabama Court of Criminal Appeals styled as a "Motion to Suspend the Rules to Allow for an Out-of-Time Application for Rehearing" citing Alexander's fraudulent machinations as grounds for allowing him to file for an out-of-time rehearing of the court's February 15, 2008, decision affirming the denial of his Rule 32 petition. On April 21, 2011, the Court of Criminal

Appeals denied Grady's application for an out-of-time rehearing.  About six weeks later, on June 3, 2011, Grady filed this § 2254 petition.

In *Holland*, *supra*, the Supreme Court held that, in certain cases, attorney misconduct with regard to a client may be so egregious as to create an extraordinary circumstance that warrants equitable tolling.  130 S. Ct. at 2563.  The Supreme Court reiterated that it had previously found that "'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Id*. at 2564 (citations omitted) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  The *Holland* Court noted that when facts of the case warrant it, equitable tolling can be applied in the "absence of an allegation and proof of bad faith, dishonesty, divided loyalty, [or] mental impairment." *Holland*, 130 S. Ct. at 2559-60.  The Court further explained that "professional conduct that fails to [rise to that level] could nonetheless amount to egregious behavior that warrants equitable tolling." *Id*. at 2563-64.  In setting aside a court's finding that extraordinary circumstances had not been demonstrated, the Supreme Court found that Holland's counsel had "failed to file Holland's federal petition on time," "failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case," and "failed to communicate with his client over a period of years," despite Holland's numerous letters to counsel that repeatedly emphasized the importance of filing the federal petition on time, identified the applicable legal rules, pleaded for information about the Florida Supreme Court's decision, and pleaded with counsel to

13

respond to the letters.  *Holland*, 130 S. Ct. at 2564.

Grady maintains that, based on *Holland*, the actions of Alexander constituted extraordinary circumstances that entitle him to equitable tolling.  Unlike the situation in *Holland*, Grady's case does not involve the misconduct of an actual attorney.  Alexander held himself out to Grady as a licensed, practicing attorney, but in fact he was not.  However, under the unique circumstances of this case, the fact that Alexander was not actually a lawyer does not determine the outcome of this court's assessment of Grady's argument for equitable tolling.  The record contains evidence indicating that Alexander, in operating his scheme in which he falsely held himself out as a lawyer, fooled not only Grady, but was able to defraud numerous other inmates and their families of attorneys fees while failing to perform legal services on their behalf.  *See* Doc. No. 17-1 at 2-8; Doc. No. 60-1.  The record further reflects that, in running this fraudulent scheme, Alexander managed to convince several actual attorneys that he was a lawyer and that these attorneys referred cases to Alexander or worked on cases with him believing he was a licensed attorney.  *See* Pet'r's Ex. B at 3-4, 12, 19-21; Doc. No. 17-1 at 2; Doc. No. 60 at 16-25; Doc. No. 60-1.  If experienced practitioners of law could fall for Alexander's ruse, Grady was even easier prey.  This court is therefore satisfied that Alexander's representation to Grady that he was a licensed, practicing attorney, followed by  Alexander's inaction and repeated active misrepresentations to Grady that he had filed his application for rehearing and was pursuing his state case, constituted "extraordinary circumstances" for purposes of equitable tolling.

Whether Grady acted with reasonable diligence in pursuing his rights presents a closer question. "Equitable tolling is not intended as a device to rescue those who inexcusably sleep upon their rights." *United States v. Ramos–Martinez*, 638 F.3d 315, 323 (1st Cir. 2011). It does not appear that, during the relevant period of time, Grady sought to contact the Alabama Court of Criminal Appeals to inquire whether an application for rehearing had been filed on his behalf or to determine the status of his case. This course of action might have enabled Grady to discover Alexander's misfeasance earlier and in time to file a timely federal habeas petition. However, it is *reasonable* diligence, not "maximum feasible diligence" that is required. *Holland*, 130 S. Ct. at 2565. The record establishes that Grady contacted Alexander on numerous occasions during the running of the federal limitation period, making diligent efforts to keep abreast of the status of his case from the individual he believed was his attorney acting on his behalf. Throughout, Alexander assured him that he had filed his application for hearing and that his Rule 32 appeal therefore remained pending in state court. As long as Grady reasonably believed his state case was still active, he had reason to delay filing his federal petition. The record suggests that Alexander was a convincing liar – to Grady as well as to other inmates and attorneys. Grady filed his § 2254 petition with this court approximately six months after discovering that Alexander was a fraud who had failed to file his application for rehearing, and less than two months after the Alabama Court of Criminal Appeals denied his application for an out-of-time rehearing. Under the circumstances, the court finds that Grady acted with reasonable diligence in

15

pursuing his rights, that he is entitled to equitable tolling, and that his habeas petition is therefore not time-barred under the statutory provisions of 28 U.S.C. § 2244(d).

**C.    Grady's Habeas Claims**

As noted above, Grady presents two claims for relief in his § 2254 petition:

1.    He was denied due process when, during closing arguments, the prosecutor "misstated, manipulated, and created evidence that was not presented at trial."

2.    His trial counsel rendered ineffective assistance by failing to allow him to testify in his own defense at trial.

Doc. No. 1 at 5-7; Doc. No. 2 at 10-13.

The respondents argue that even if this court concludes Grady is entitled to equitable tolling and that his petition is not time-barred, his habeas claims are nevertheless procedurally defaulted and unexhausted and that, therefore, they should not be reviewed on their merits.  Doc. No. 54 at 5-13.

A state prisoner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also* 28 U.S.C. § 2254(b)(1) (a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State.").  The exhaustion doctrine requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.  In Alabama, the established appellate review process includes an appeal to the Alabama Court

of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court. *See* Ala. R. App. P. 4 and 39-40. A state prisoner's failure to present his claims to the state courts in the proper manner results in a procedural default of those claims. *O'Sullivan*, 526 U.S. at 848. The doctrine of procedural default, as it relates to petitions filed under 28 U.S.C. § 2254, arises from principles of comity and federalism. *Francis v. Henderson*, 425 U.S. 536, 541 (1976).

Once a federal claim is procedurally defaulted in state court, a state habeas petitioner "is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle,* 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" or that the procedural default was the result of ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice, in this context, means a reasonable probability that the outcome would have been different. *Jenkins v. Bullard*, 210 F. App'x 895, 898–901 (11th Cir. 2006). In the absence of a showing of cause and prejudice, the court may yet consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." *Smith v. Murray*, 477 U.S. 527, 537-38 (1986). Absent one of these exceptions, however, procedurally defaulted

17

claims cannot be raised in federal habeas corpus petitions.  *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1343–45 (11th Cir. 2004).

### 1.      *Prosecutor's Closing Arguments*

The respondents correctly maintain that Grady's claim regarding the alleged misstatements and "manipulation of evidence" by the prosecutor during closing arguments was not properly exhausted in the state courts.  *See* Doc. No. 54 at 5-13.  Grady's claim of misconduct in the prosecutor's closing arguments was among the issues raised by Grady in the *pro se* brief he filed on direct appeal when his appellate counsel filed an *Anders* brief.  *See* Doc. No. 54, Resp'ts' Ex. C at 1-10.  The Alabama Court of Criminal Appeals rejected Grady's claim as being without merit in its unpublished memorandum opinion issued on August 11, 2006.[13]  Grady did not file an application for rehearing of the Court of Criminal Appeals' decision or seek certiorari review of that decision in the Alabama Supreme Court.  Therefore, he failed to fully exhaust this claim by invoking "one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845; *see* Ala. R. App. P. 4 and 39-40.

No state remedy remains by which Grady may now present this unexhausted claim, because any attempt to exhaust the claim in state court would be barred by applicable state procedural rules.  "[W]hen a petitioner has failed to exhaust his claim by failing to fairly

---

[13] As noted above in this Recommendation, the Court of Criminal Appeals's stated, "This court has examined the record, appellate counsel's brief, and the appellant's pro se brief, and is in agreement with appellate counsel that there are no issues contained therein which could be deemed meritorious on appeal."  Doc. No. 8, Resp'ts' Ex. A at 2.

present it to the state courts and the state court remedy is no longer available, the failure . . . constitutes a procedural bar." *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005). Grady's claim of misconduct in the prosecutor's closing arguments is therefore procedurally defaulted. Grady does not attempt to establish cause for his failure to exhaust this claim in state court, and he fails to make the requisite showing to establish his actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).[14] Consequently, his procedurally defaulted claim is foreclosed from federal habeas review.

### 2. *Counsel's Failure to Allow Grady to Testify*

In his habeas petition, Grady also contends that his trial counsel rendered ineffective assistance of counsel by not allowing him to testify in his own defense at trial. Doc. No. 1 at 5-6; Doc. No. 2 at 10-11. Grady presented this claim in his Rule 32 petition; however, he failed to fully exhaust this claim in the state courts as a consequence of Alexander's failure to file an application of rehearing on his behalf after the Alabama Court of Criminal Appeals

---

[14] To establish actual innocence, [a habeas petitioner] must demonstrate that "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). "[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* at 324. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). Grady does not assert that he has "new" reliable evidence of factual innocence, and there is nothing in the record that suggests a miscarriage of justice will occur if the court does not reach the merits of his defaulted claim. Grady simply presents no evidence, nor does he suggest that any exists, that could satisfy the difficult standard set forth in *Schlup*.

affirmed the trial court's denial of his Rule 32 petition.  This court finds that Alexander's misfeasance (as recounted above in Part II.B of this Recommendation) constitutes cause for Grady's procedural default of this claim; consequently, this court will assess the merits of this claim to determine if Grady was actually prejudiced as a result of the procedural default.

As noted, Grady asserts that his trial counsel was ineffective for not allowing him to testify at trial.  The ineffective assistance standard requires a showing of deficiency plus prejudice.  The elements to be considered are as follows:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thus, a petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

The law is settled that a criminal defendant has a fundamental constitutional right to testify in his own behalf at trial.  *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987); *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992).  Thus, every criminal defendant is privileged to testify in his own defense or refuse to do so.  *Faretta v. California*, 422 U.S. 806, 834 n.45 (1975).  Defense counsel bears the primary responsibility for advising the

defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. *Teague*, 953 F.2d at 1533. Because the burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, it is, therefore, a component of effective assistance of counsel. *Id.*; *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998).

In his habeas petition, Grady asserts that, prior to trial, he and his attorney agreed on his defense and that he would testify at trial. Doc. No. 1 at 5; Doc. No. 2 at 10-11. However, after the State presented its case, Grady's counsel rested the defense's case without calling Grady to testify. According to Grady, his counsel "rested without presenting any of the evidence/defense we agreed upon, and would not call me to the stand." Doc. No. 1 at 5.

In his Rule 32 petition, Grady presented this claim as follows:

> The petitioner next alleges that he was denied his right to testify by law in his defense based upon ineffective assistance of counsel during trial. [Defense counsel] Mrs. [Margaret] Brown was aware that the State intended to use Grady's prior convictions under Rule 609 to impeach his testimony. For this reason, Mrs. Brown kept insisting that Grady not testify to the facts of what happened. Grady has asked Mrs. Brown was she going to call him to the stand, and alert jurors of that fact that this case hinged upon an attempt[ed] theft spoiled by the petitioner's actions and spontaneous thinking. However, the States's evidence showed the facts without being told that Grady's car was being stolen. The jury had no reference to relate the evidence to. This was ineffective assistance of counsel. Mr. Grady was not allowed to tell what happened and the trial counsel did not explain it to the jury in opening arguments either. Thus, the case was one sided with [the] defense not putting on a defense.

Doc. No. 54, Resp'ts' Ex. D at 34.

Grady does not claim that he was unaware of his right to testify or that his attorney

21

did not advise him concerning his right to testify. Further, it is not entirely clear from Grady's allegations – particularly as set forth in his Rule 32 petition – if he is contending that his counsel refused to call him to the stand despite his explicit request to testify, or if he is instead taking issue with counsel's advice that he should not testify (in light of the prosecution's intention to impeach his testimony with evidence of his prior convictions). In other words, it is unclear if Grady is claiming that his counsel refused to honor his decision to testify, or if he is instead challenging a strategic decision by counsel that he should not testify to which he acceded.

Pursuant to this court's order, Grady's trial counsel, Margaret Y. Brown, submitted an affidavit addressing Grady's claim that she was ineffective for not allowing him to testify. Doc. No. 63-1. Brown avers that, both in preparing for trial and at trial, she throughly discussed with Grady all matters related to his right to testify. *Id.* at 1-2. Prior to trial, Brown moved in limine to request that the State not be allowed to present evidence of Grady's prior felony convictions – for two counts of shooting into an occupied dwelling and one count of possessing a short-barreled gun. Doc. No. 54-2, Resp'ts' Ex. A at 76. The State agreed not to present evidence about Grady's prior convictions in its case-in-chief, and the trial court took under advisement the issue of whether the priors would be admissible for purposes of impeachment if Grady chose to testify. *Id*. at 2. At the close of the State's evidence, the trial court heard further from both sides and determined that two of the prior convictions could be used for impeachment if Grady testified and that the third conviction

22

might be admissible depending on Grady's testimony. Doc. No. 54-5, Resp'ts' Ex. A at 193-201; Doc. No. 54-6, Resp'ts' Ex. A at 1-9. Brown states that she apprised Grady of the ramifications of this ruling by the trial court and that Grady then chose not to testify "based on his record, the evidence in the case, and the trial court's ruling regarding use of his prior convictions for impeachment." Doc. No. 63-1 at 2. According to Brown, she does not make the final decision for any client regarding whether or not to testify. *Id*. at 2-3.

Grady maintains that if he had testified, he could have placed his actions in context and would have been able to tell his version of events, which is essentially that he shot the victim after discovering the victim in the process of stealing his car. Doc. No. 54, Resp'ts' Ex. D at 34. According to Grady, he had left his car in the driveway with the motor running and gone inside his father's residence to retrieve a traffic ticket he needed to pay, when he saw the victim backing the car out of the driveway. *Id*. at 31. Grady grabbed a gun and ran outside and told the victim to stop; he then fired the gun several times into the car, killing the victim. *Id*. at 31-32. The victim was alone inside the car. According to Grady, after he shot the victim, he recognized the victim as a "gang member." *Id*. at 32. He pulled the victim's body from the car and drove away, fearing retaliation from other gang members. *Id*. Four bullets were recovered from the victim's body. Cartridges from the bullets were found near the front door of the residence as well as inside the car. Grady does not claim that he saw the victim with a gun or that he believed the victim intended to hit him or anyone else with the car. Thus, Grady's story is that he shot the victim to thwart the theft of his car.

Grady argues that the version of events he says he would have testified to would have established that his shooting of the victim was legally justified. But his version of events does not establish a legal defense. Alabama law does not authorize the use of deadly force even under Grady's version of events, i.e., for the sole purpose of preventing the theft of property. Such testimony from Grady would not have sustained a claim of self-defense[15] or any lesser included offense of murder. Grady does not claim that he was in fear for his safety or the safety of another when he shot the victim. Even under Grady's own version of events, he did not recognize the victim as a "gang member" until after he shot the victim. Further, testimony from Grady admitting to shooting the victim would have been inconsistent with the defense pursued by his counsel (through cross-examination of the State's witnesses and during closing argument), who argued that the State had not proved beyond a reasonable doubt that it was Grady who shot the victim and told jurors that the shooting took place in high drug-crime area, suggesting that the shooting was drug-related and was thus committed by someone other than Grady.[16] *See* Doc. No. 54-6, Resp'ts' Ex. A at 26-46. Finally, if Grady had testified, the prosecution would have been allowed to impeach him with evidence of his prior convictions for shooting into an occupied building – this in a trial where he was accused of killing someone by shooting into a vehicle.

A court may decline to reach the performance element of an ineffective assistance of

---

[15] *See* § 13A-3-23, Ala. Code 1975.

[16] During closing argument, Grady's counsel noted that alcohol, cocaine, and marijuana were found in the twenty-year-old victim's system. Doc. No. 54-6, Resp'ts' Ex. A at 32-33.

counsel claim if convinced that the prejudice prong cannot be satisfied. *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995). Even assuming arguendo that defense counsel somehow interfered with Grady's right to testify,[17] this court is convinced that Grady was not prejudiced. In short, had Grady testified, the outcome of the proceedings would not have been different. Consequently, Grady is not entitled to habeas relief based on this claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Grady be denied and that this case be dismissed with prejudice. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 4, 2014**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District

---

[17] There is no basis on which this court can conclude that defense counsel's advice to Grady regarding whether he should testify was anything but sound trial strategy.

Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

  Done this 21st day of January, 2014.

       /s/ Wallace Capel, Jr.
       WALLACE CAPEL, JR.
       UNITED STATES MAGISTRATE JUDGE